J. R. SAXON v. CHAMPION SHOE MACHINERY COMPANY.

Western Section.    March 23, 1928.

Petition for Certiorari denied by Supreme Court, June 30, 1928.

604

Winchester & Knapp and Poston Cox, of Memphis, for appellant. McDonald & McDonald and Robert W. Hall, of Memphis, for appellee.

OWEN, J.  J. B. Saxon, the complainant below, recovered a judgment for $725 and interest and cost against the defendant. The defendant is a corporation and a nonresident of Tennessee. Certain other parties were made defendants by garnishment and funds in their hands were attached. The defendant executed a replevin bond and there is no defendant interested now except the Champion Shoe Machinery Company, hereinafter called defendant.

The complainant alleged that he had purchased certain machinery from the defendant company, paying a part of the consideration in cash and executing deferred payment notes, and the defendant retained title to said property. The complainant had been engaged in the shoe repairing business on Lamar avenue in Memphis, Tennessee. On account of ill health he had to leave the State and go to a sanitarium and he left his business in charge of an agent. This agent sold all of complainant's property to one Groome.

Groome was to pay certain monthly payments, and it was stated in the contract with Groome that complainants still owed a balance to the defendant and the defendant held title notes to certain parts of complainant's property. Some of the property sold to Groome appears to have been free from any lien. It was alleged that the de-

fendant company took possession of said machinery because the complainant had defaulted in one payment, and that on the same day the property was repossessed the defendants sold the property which complainant had purchased from defendant on time to one McDonough, without advertising and selling same, or obtaining a waiver from complainant as required by the Conditional Sales Law of the State of Tennessee.

It was alleged by complainant that the defendant by reason of its failure to advertise said property according to the terms of the statute was indebted to complainant in the sum of $1000. Complainant asked for a decree for this amount. The defendant admitted that the complainant purchased the machinery described in the bill, denied that the complainant had paid $1000 on it, and it denied that it had sold the machinery to McDonough the day that it repossessed it. It was insisted that the complainant had abandoned the machinery and left the city without notifying defendant, and that the complainant had sold the machinery in his possession to one Groome without the defendant's consent; that when defendant discovered that the complainant had sold his property to Groome and that Groome was in possession of the machinery, the defendant had Groome to execute a contract to it retaining title for the unpaid purchase money and that Groome defaulted in his payments and upon default surrendered the property to the defendant.

A number of depositions were taken and the Chancellor filed a lengthy finding of fact, finding that on January 26, 1923 the complainant purchased from the defendant under a conditional sales contract certain pieces of machinery minutely described in the opinion of the Chancellor and in the decree; that the purchase price was $1027 and that complainant paid $150 cash and executed notes for the balance in monthly installments of $25 per month beginning with March 1, 1923, and the last note being for $27; that this machinery was installed in complainants shop at 1607 Lamar Boulevard, Memphis, Tennessee; that the complainant operated a shop until the latter part of the year 1924 when he was forced to leave Memphis on account of his health; that he met his payments with reasonable punctuality until January 21, 1925; that this installment was paid February 4, 1925. Complainant had paid to the defendant $725, leaving a balance of $302; that when the complainant left Memphis, he left his business in charge of one William Loewenberg. Loewenberg, upon the complainants instructions, sold the equipment purchased from the defendant, and certain other property, to one Groome. Groome was placed in possession of the shop. Groome executed a chattel mortgage to one Ira Lichlerman and Lee Winchester, as trustees, to secure twenty-five notes of $25 each, payable monthly, or a total of $565, to complainant. In this mortgage

it was expressly stated that as to defendant's machinery Groome only had an equitable interest, and the mortgage was subject to the prior lien of defendant. This mortgage was dated March 6, 1925, but was never filed for record.

The defendant was not advised of this sale from complainant to Groome at the time it was made, but shortly thereafter learned of said sale and made a new conditional sales contract with Groome. The consideration expressed in this contract was $302, of which amount $100 was paid in cash and the remainder was in seven monthly installments. The defendant never at any time released complainant from his unpaid installments on the purchase price of said machinery. On October 8, 1925, Groome turned over to the defendant the property which the defendant had sold to complainant, and on that date, or the following day, the defendant sold the property to one McDonough. This was done without the knowledge of complainant, or his agent.

As soon as Loewenberg (complainant's agent), learned of this transaction between Groome and the defendant, he (Loewenberg) went to the defendant's agent in Memphis, Tennessee, and notified defendant of complainant's interest in the property and asked why he had taken possession of it without any notice to complainant's agent. Defendant's agent was named Menzer. Menzer knew that Saxon had gone away for his health. Loewenberg at this time offered to pay Menzer as agent of the defendant the balance owing by Saxon and take the machinery. Menzer refused, because he had sold the machinery to McDonough, and upon Loewenberg's inquiry as to why Menzer had acted in the manner in which he did, Menzer replied it was none of Loewenberg's business.

Neither complainant nor Groome signed any waiver of the advertisement for the sale of said machinery as required under the conditional sales statute. Neither the complainant nor his agent knew of the conditional sales contract made by defendant to Groome. This contract did not in any way recognize or take into consideration the substantial equity Saxon had in the property.

The Chancellor held that complainant was entitled to recover of the defendant and his surety on the replevy bond $725 together with the cost of the cause. The defendant excepted to this decree, prayed and was granted an appeal to this court and has assigned four errors.

By the first error it is insisted that the Chancellor erred in holding that the defendant had not at any time released complainant from his unpaid installments on the purchase price of said property.

Second: The Chancellor erred in holding that the defendant took possession of the property and made a new conditional sales contract with Groome.

Third: The Chancellor erred in holding that complainant or his agent did not know of the contract between Groome and the defendant.

The fourth assignment complains of the action of the Chancellor in rendering a decree against the defendant.

Learned counsel for appellant state that the only proposition of fact involved in this case (and they do not think it is material) is whether or not Saxon through his agent knew Groome executed a contract to the defendant covering the balance due on the machinery.

It is next insisted that complainants sold all of his right, title and interest in and to the machinery to Groome, subject only to the indebtedness of defendant company; that Groome succeeded to all the rights and liability of Saxon under the conditional sales contract originally entered into between the parties, and that the company could only look to Groome after consenting to the sale from Saxon to Groome.

The defendant never did release Saxon or give up his notes. Saxon was out of the State, a sick man, in a sanitarium, stricken with tuberculosis, depending upon his agent Loewenberg, who operated the business of complainant until sold to Groome.

Complainant evidently thought, or his agent did, that there was considerable equity in this business. There was only $302 due the defendant. Groome reduced the defendant's indebtedness $100. Groome was to pay Saxon $565.

It appears that defendant's agent procured Groome to surrender the property upon payment of $10, and Groome disappeared. That is the testimony of defendant's agent. Groome was not located and whither he went after making the surrender to the defendant is unknown.

Section 3666 of Shannon's Code provides:

"When any personal property is sold upon condition that the title remain in the seller until that part of the consideration remaining unpaid is paid, it shall be the duty of said seller, having regained possession of said property because of the consideration remaining unpaid at maturity, to, within ten days after regaining said possession, advertise said property for sale, for cash, to the highest bidder, by written or printed posters posted at as many as three public places in the county where the property is to be sold, one of said places to be in the district in which said property is to be sold and one at the courthouse door in the county in which the property is to be sold, and the other or third at any public place in the county, said notice to be posted at least ten days before the day of sale, and to contain a description of the property to be sold, and time and place of said sale. Unless the debt is satisfied before the day of sale, then it shall be the duty of said original seller, or his

agent, at the time and place as stated in said notices, to offer for sale, and sell, said property, as provided above, and, with the proceeds of said sale, satisfy the amount of his claim arising from said conditional sale above mentioned, and the expenses of advertisement, if any, and the remainder of said proceeds, if any, he shall pay over to the original purchaser; but the said original seller and purchaser may at any time, by agreement, waive the sale provided in this article.''

Section 3669 Shannon's Code provides:

''Should the seller, having regained possession of said property, fail to advertise and sell the same as provided by this article (unless said sale is waived as provided), the original purchaser may recover from said seller that part of the consideration paid, in an action for the same before any Justice of the Peace or court having jurisdiction of the amount.''

It is the positive duty of the original vendor to resell the property upon his reclamation thereof under the contract, and for his failure to do so within the manner and within the time required by the statute, the original purchaser may recover from him the entire amount paid on the contract, without set-off or abatement for the use, hire, or rent of the property. Note 4, sec. 3669, Shan. Code; Cowan v. Manufacturing Co., 8 Pickle, 376, 378, 379, 382-384; Lieberman v. Puckett, 10 Pickle, 275; Furniture Co. v. Boon, 18 Pickle, 720; Massilon Engine & Threshing Co. v. C. R. Wilkes, 82 S. W. Rep., 316, 317, 319; Case v. Watson, 14 Cates, 152. See Fleming v. Patterson, 2 Shan. Cas., 88, a case decided before the enactment of this statute.

The summary remedy provided in this conditional sale statute, when used, must be strictly pursued, by retaking possession by consent of the purchaser or by process of law, so that the respective rights of both parties may be fully protected and enforced. Note 7, sec. 3666, Shan. Code; Ice & Coal Co. v. Alley, 19 Cates, 173, 179, 180 (headnote 2), citing Case v. Watson, 14 Cates, 148.

This statute (Sec. 3666, Shan. Code) providing for conditional sales contemplates two cases, one where the vendor retakes possession by consent of the purchaser, and the other where it is necessary to regain possession by process of law, in the absence of consent. This can be done by an action of replevin, and if the right is not controverted, it is the duty of the vendor upon retaining the possession to proceed at once, under the statute. Note 8, sec. 3666, Shan. Code; Lieberman v. Puckett, 10 Pickle, 273; Ice & Coal Co. v. Alley, 19 Cates, 179.

This statute regulating conditional sales recognizes that both the seller and purchaser have an interest in the property, and it makes provision for the full protection and enforcement of their respective

rights. Cowan v. Manufacturing Co., 8 Pickle, 381; Ice & Coal Co. v. Allen, 19 Cates, 179; Note 9, sec. 3666, Shan. Code.

In the case of White v. Bragg, 273 S. W., /p. 7, decided by the Supreme Court of Arkansas, April 20, 1925, it was held that "where a seller retakes possession of an article sold under a conditional sales contract governed by Shannon's Code of Tennessee, section 3666, the buyer sued by the seller was not precluded by a sale of his equity to a third party from maintaining cross-action against seller for latters failure to resell article repossessed pursuant to the Tennessee statute."

It was further held that "a lien created in favor of the buyer by the law of Tennessee (Shan. Code, sec. 3666) will be enforced through comity by the courts of other states."

We quote from the facts of the Arkansas case of White v. Bragg, supra, as follows: "Appellant brought this suit in the circuit court of Crittenden county against appellee to recover a balance of $1760 upon a note given for the purchase money of an automobile bus. It was alleged in the complaint that appellant sold the bus to appellee in Memphis, Tennessee, under a conditional sales contract for $6,134, of which sum $1,134 was paid in cash, the balance being payable in installments, evidenced by seven promissory notes; that the conditional contract provided that the title to the bus should remain in appellant until the purchase money was paid in full, and that upon failure to pay same at maturity appellant should have the right to repossess and sell it at public auction, credit the amount received on the purchase money, and recover the balance from the appellee; that on December 12, 1922, there remained due and unpaid $2,288.08, whereupon appellant seized and sold the bus at public sale, at which sale it brought $528.08 and that said amount was applied upon the debt, leaving a balance of $1,760.

"Appellee filed an answer admitting all of the allegations in the complaint except the allegation that appellant sold the bus at public sale in the manner provided under the law in Tennessee; and also filed a cross-bill to recover $4000 which he had paid appellant on the purchase price of said bus, upon the ground that appellant had rescinded the contract by failing to advertise and sell the bus in accordance with the laws of Tennessee.

"The cause was submitted to a jury upon the pleadings, testimony, and instructions of the court which resulted in a verdict in favor of appellee on his cross-bill for $4000 which was reduced by the court to $3900. A judgment was rendered in accordance with the verdict as reduced, from which is this appeal."

The court in its opinion quotes the sections of the Code we have heretofore set out, and then proceeds:

"The undisputed testimony shows that on December 12, 1922, default was made in the payment of the balance of the purchase money due on the notes; that the balance due thereon was $2288.08, and that appellant took possession of the bus in Memphis for the purpose of selling it in accordance with the terms of the contract and the laws of Tennessee. There is a conflict in the testimony as to whether the sale of the bus was advertised and made in accordance with the law. This issue was submitted to the jury under correct instructions and decided adversely to appellant. The finding of the jury is, therefore, conclusive upon it.

"Appellant makes the further contention, however, that because appellee had sold his equity in the bus to O. B. Cook he had no right to recover the amount he paid appellant as purchase money for the bus. The record does show that by and with the consent of appellant, appellee sold his equity in the bus to O. B. Cook, but also shows that appellant did not release appellee from the original contract. On the contrary, appellant brought suit against appellee upon the original contract. We are unable to see why appellee cannot maintain a cross-action under the original contract if still bound by the contract. The Tennessee statute provides that, the original purchaser may recover the purchase money paid to the vendor if said vendor retakes the property and fails to sell it at public sale after advertising the sale in the manner and for the time prescribed by the statute. The statute created a right and not a remedy and the right will be enforced, through comity, by courts of other States."

We concur with the Chancellor in his findings of fact; and with the application of the law to the facts of this case we are of opinion that the defendant is liable for the amount recovered in the lower court. It results that the assignments of error are overruled and disallowed and the judgment of the lower court is affirmed.

The complainant will recover of the defendant and its surety on appeal bond the amount of the judgment rendered in the lower court, with interest thereon from the date of its rendition and all of the costs of the cause, including the cost of the appeal, for which execution will issue.

Senter and Heiskell, JJ., concur.